UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THE UNITED STATES OF AMERICA

                              **Hon. Hugh B. Scott**

                              02CR255

            v.                      Decision
                                          &
                              Order

Mohamed Albanna et al.,

                Defendants.
_____

Before the Court are the defendants respective omnibus motions (Docket Nos. 29, 42 and 68)[1].

**Background**

On January 8, 2004, a Superceding Indictment was issued charging Mohamed Albanna ("Albanna"), Ali A. Albanna ("Ali Albanna"), Ali Taher Elbaneh ("Elbaneh") and Abdul Wali Kushasha ("Kushasha") with conspiring to conduct an unlicensed money transmitting business in violation of 18 U.S.C. §1960(b)(1)(A) and (B) (Count I). The Superceding Indictment also charged all four defendants with conducting the unlicensed money transmitting business (Count II); failing to file a currency transaction report in violation of 31 U.S.C. §5313 and 5322 (and

---

[1] This motion on behalf of Mohammed Albanna (Docket No. 68) was submitted to the Court on July 23, 2004 but not administratively entered on the docket until October 13, 2005. The record reflects that the motion was contemporaneously served on all parties, was responded to, and argued along with the motions filed on behalf of the other defendants in this case.

regulations promulgated thereunder) (Count III); and criminal forfeiture in the amount of $3,520,984.00 pursuant to 18 U.S.C. §982 and 21 U.S.C. §853 (Count VI). In addition, the Superceding Indictment charges Mohamed Albanna with two counts of assisting in the filing of a false tax return in violation of 26 U.S.C. §7206 (Counts IV and V).

The government asserts that on December 6, 2001, the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") was contacted by Federal Express regarding a package being sent to Yeman from a business operated by Albanna, Queen City Cigarettes and Candy ("Queen City"). Members of a Joint Terrorism Task Force (comprised of agents from ICE and the Federal Bureau of Investigation ["FBI"]) opened the package and examined the contents. The package allegedly contained checks drawn from a Key Bank account utilized by Queen City. The government opened several other similar packages over the course of a several month investigation. The government asserts that its investigation revealed that Albanna sent large amounts of money in the form of money orders and checks drawn on the Queen City account to an entity known as the Juban Exchange in Sanaa, Yemen. In addition to the checks and money orders, the packages included ledgers reflecting the names of the individuals in the United States who were sending the money; the names of the recipients of the funds in Yeman; and the commission Queen City was to receive for the transfer. As part of its investigation, the government obtained authority to eavesdrop with respect to two telephones located inside Queen City. On December 12, 2002, a search warrant was issued authorizing the search of properties located at 1282 Clinton Street in Buffalo, New York; 167 Lehigh Avenue and 58 Ingham Avenue in Lackawanna, New York. According to the government, ledgers were found reflecting that the defendants transferred approximately $1.7 million in 2001 and $2.9

million in 2002.

The defendants deny that they violated any state or federal laws.

The motion filed on behalf of Elbaneh and Ali Albanna seeks the following relief: (1) disclosure of Brady[2] material: (2) the identification of informants; (3) disclosure of material under Rule 404(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. Proc."); (4) discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure (Fed. R. Crim. Proc) and notice pursuant to Rule 12(d) of the Fed. R. Crim. Proc.; (5) a Bill of Particulars; (6) the search of the personnel files of government agent witnesses; (7) the preservation of evidence; (8) disclosure of information under Rule 807 of the Fed. R. Civ. Proc.; (9) the suppression of physical evidence; (10) an audibility hearing with respect to tape recordings; (11) suppression of evidence obtained pursuant to eavesdrop orders; and (12) suppression of evidence obtained as a result of searches at 1282 Clinton, 176 Lehigh and 58 Ingham as well as the evidence obtained as a result of the searches of the Federal Express packages. (Docket No. 29). In addition, Ali Albanna moves to suppress any statements he may have made to government agents at the time of the execution of a search warrant on December 17, 2002. (Docket No. 42). Defendant Albanna joins in the motions brought on behalf of Elbaneh and Ali Albanna (Docket No. 68).[3]

## Discovery

The defendants seek various items of pretrial discovery. The government has represented that it has provided the defendants with broad voluntary discovery in this matter. The defendants

---

[2]   Brady v. Maryland, 373 U.S. 83 (1963).

[3]   All suppression issues will be dealt with in a separate Report & Recommendation.

have not advised the Court of any outstanding discovery issue.

## Rule 12 Notice

Pursuant to Rule 12(d)(2) of the Federal Rules of Criminal Procedure, several of the defendants have requested that the government give notice of its intention to use at trial any evidence which is discoverable under Rule 16. If not already produced, the government shall produce a Rule 12 statement to each of the defendants.

## Bill of Particulars

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. U.S. v. Torres, 901 F.2d 205 (2d Cir. 1990). The government is not obligated to "preview its case or expose its legal theory" U.S. v. LaMorte, 744 F.Supp 573 (S.D.N.Y. 1990); U.S. v. Leonelli, 428 F.Supp 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed" U.S. v. Andrews, 381 F.2d 377 (2d Cir. 1967). Notwithstanding the above, there is a special concern for particularization in conspiracy cases. U.S. v. Davidoff, 845 F.2d 1151 (2d Cir. 1988).

Upon review of the indictment, the Court finds that defendants are not entitled to a Bill of Particulars inasmuch as each defendant is sufficiently advised of the charges against him to allow for the proper preparation of a defense, to avoid surprise at trial, and to protect the defendant from double jeopardy.

**Brady Material**

The defendants have requested that the government disclose all materials potentially favorable to the defendants, including information to be used for the impeachment of the government's witnesses, as required under Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. Brady material, as those cases have come to define it, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment. Such evidence includes "[a]ny and all records and/or information which might be helpful or useful to the defense in impeaching ... [and] [a]ny and all records and information revealing prior misconduct attributed to the [government's] witness." U.S. v. Kiszewski, 877 F.2d 210 (2d Cir. 1989).

The defendants' motions identify numerous specific categories of documents encompassing both exculpatory and impeachment Brady materials which they seek to obtain. The government has represented that it is aware of its continuing obligations under Brady but does not represent whether such information, if any, has been disclosed. (Docket No. 32 at page 9).

Neither the Supreme Court, nor the Second Circuit,[4] have ruled directly on whether a there is a meaningful distinction between "exculpatory Brady" and "impeachment Brady" materials for purposes relating to the timing within which such information must be disclosed. Several other courts have discussed the issue at hand, which often arises in the context of a potential, if not inherent, conflict between the government's obligations to disclose under Brady

---

[4] In a footnote in its opinion in Lucas v. Regan, 503 F.2d 1, 3 n.1 (1974), the Second Circuit stated that "[n]either Brady nor any other case we know of requires that disclosures under Brady be made before trial."

and the governments right to delay disclosure of certain information pursuant to the Jencks Act. Those cases suggest that the court has some discretion with respect to directing the timing of such disclosure. U.S. v. Campagnuolo, 592 F.2d 852 (5th Cir. 1979)(the Court interpreted Brady to require disclosure "at the appropriate" time, which often is prior to trial); U.S. v. Perez, 870 F.2d 1222 (7th Cir. 1989)(the government's delay in disclosing Brady material violates due process only if the delay prevented the defendant from receiving a fair trial); U.S. v. Ziperstein, 601 F.2d 281 (7th Cir. 1979)(a defendant receives a fair trial, notwithstanding delayed disclosure of Brady material, as long as disclosure is made before it is too late for the defendant to make use of any benefits of the evidence). But see U.S. V. Wilson, 565 F.Supp 1416 (S.D.N.Y. 1983) (impeachment material need not be produced prior to trial); U.S. Biaggi, 675 F.Supp 790 (S.D.N.Y. 1987)(information bearing on a witness' credibility may be turned over at the same time as [Jencks Act] materials); U.S. V. Feldman, 731 F.Supp 1189 (S.D.N.Y. 1990)(it is sufficient for the government to disclose Brady impeachment materials along with [Jencks Act] materials).

     The Jencks Act relates only to "statements" made by government witnesses. Such statements may include inconsistencies which make them useful for impeachment purposes, and thus, subject them to disclosure under Brady principles. To this extent, it has been suggested that the constitutional requirements underlying Brady could act to modify the Jencks Act. U.S. v. Campagnuolo, 592 F.2d 852, 860 (5th Cir. 1979). But see U.S. v. Presser, 844 F.2d 1275 (6th Cir. 1 988)(the government may not be compelled to pretrial disclosure of Brady or Jencks material). The record in this case does not reflect whether any of the materials withheld by the government may be considered both Brady and Jencks material. Certainly "impeachment Brady"

material may include several items which are not considered "statements" under the Jencks Act.

This Court believes that fundamental fairness and the constitutional due process requirements which underlie Brady mandate that the court have some discretion with respect to the timing of the disclosure of such information, even if it may be considered combined Brady/Jencks material. Indeed, even with respect to purely Jencks Act materials, the Second Circuit has stated that "pre-trial disclosure will redound to the benefit of all parties, counsel and the court, ... sound trial management would seem to dictate that Jencks Act material should be submitted prior to trial ... so that those abhorrent lengthy pauses at trial to examine documents can be avoided." U.S. v. Percevault, 490 F.2d 126 (2d Cir. 1974); U.S. V. Green, 144 F.R.D. 631 (W.D.N.Y. 1992).

The instant case does not appear to be unusually complex.  To the extent the government is in possession of exclupatory Brady material, the government is directed to disclose such information.  Balancing the factors discussed above, the disclosure of impeachment material, if any exists, shall be in accordance with the common practice in this district (prior to trial so long as it is disclosed in sufficient time for the defendant to have a fair opportunity to utilize the information at trial).

**Identity of Informants**

Several defendants seek the pre-trial disclosure of the identity of any informants in this case.  The government is not required to furnish the identities of informants unless it is essential to the defense.  Roviaro v. United States, 353 U.S. 52, 60-61 (1957); United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.) cert. denied 489 U.S. 1089 (1988).  Rule 16 does not require the

government to disclose the names of witnesses prior to trial.  United States v. Bejasa, 904 F.2d 137, 139 (2d. Cir.) cert. denied 498 U.S. 921 (1990).  The defendants have not established that the pre-trial disclosure of the identities of any informants is essential to their defense.   This request is denied.

**Rule 404 Evidence**

The defendants request disclosure of all evidence of prior bad acts that the government intends to use in its case-in-chief, pursuant to Federal Rule of Evidence 404(b). The government has represented that it has disclosed or made available all known information about the defendants that it intends to rely on at trial.

**Preservation of Evidence**

The defendants have also requested preservation of rough notes and other evidence taken by law enforcement agents involved.  The government has agreed to preserve all items of evidence.

**Search of Personnel Files**

The defendants request that the government search the personnel files of any government agent or police witness involved in this case to determine whether any Brady material exists. The government does not oppose this request and has stated that it will undertake such a review and will produce any discoverable material if such exists.

**Requests under Rule 807**

Pursuant to Rule 807 of the Federal Rules of Evidence, the defendants have requested disclosure of statements subject to the residual exception of that rule which the government intends to use at trial.  The government has represented that it is unaware of any evidence falling under Rule 807 in this case.  If the government should determine that it will attempt to introduce such hearsay statements, the government is directed to notify the defendants of such at the time of its pretrial memorandum with the District Court.

**Audibility**

Several defendants seek audibility hearings regarding tape recordings the government intends to use at trial.  The government does not oppose this request.  If, after having an opportunity to listen to any such recordings, defense counsel believes an audibility hearing is warranted, counsel is directed to notify the court so that such a hearing can be scheduled.

**Conclusion**

For the reasons stated above, the respective omnibus motions  (Docket Nos. 29, 42 and 68) are granted in part and denied in part consistent with the above.

So Ordered.

                                        s/ Hon. Hugh B. Scott
                                        United States Magistrate Judge

October 15, 2005
Buffalo, New York